STATE of Wisconsin, Plaintiff-Respondent,

v.

Carl Ralph EICHORN, Defendant-Appellant.†

Court of Appeals

*No. 2009AP1864–CR. Submitted on briefs April 1, 2010.
—Decided April 27, 2010.*

2010 WI App 70

(Also reported in 783 N.W.2d 902.)

† Petition for Review denied w/o costs on 7/21/10.

241

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Melissa Fitzsimmons*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J.  Carl Ralph Eichorn appeals the judgment entered after the trial court found him guilty in a bench trial of stalking. *See* Wis. Stat. § 940.32. He contends that there was insufficient evidence to support his conviction. We disagree and affirm.

## I.

¶ 2.  As material to this appeal, Wis. Stat. § 940.32 provides:

> **(2)** Whoever meets all of the following criteria is guilty of a Class I felony:

(a) *The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress* or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

(b) *The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress* or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c) *The actor's acts cause the specific person to suffer serious emotional distress* or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

(Emphasis added.) Also as material here:   " 'Course of conduct' means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose, including any of the following: 1. Maintaining a visual or physical proximity to the victim[; or] 2. Approaching or confronting the victim." Section 940.32(1)(a). (Paragraph formatting deleted.) " 'Suffer serious emotional distress' means to feel terrified, intimidated, threatened, harassed, or tormented." Section 940.32(1)(d). Violation of § 940.32 is a Class H felony if the "victim is under the age of 18 years at the time of the violation." Section 940.32(2m)(e).

¶ 3.   Eichorn was convicted of stalking seventeen-year-old Vivian L. According to Vivian L.'s testimony, the stalking happened around 6:25 p.m. in December of 2007 when she was waiting for a bus after having attended a late class at her high school. She told the trial court that Eichorn drove up to the bus stop and,

243

when he was four to five feet away, rolled down his passenger-side window and asked her if he could give her a ride:

> He asked me did I want a ride and I pretended like I didn't hear him. I put my MP3 player in my ear and then I was acting like I didn't hear him, and then he kept telling me to get in the car, and once I didn't get in the car, he said F me and he waved his hand and rode off.

According to Vivian L., Eichorn told her five times that he wanted to take her home and asked her whether she wanted a ride "[a]bout three" times. Finally, she yelled at him, "No. Leave me alone." When he testified at the trial, Eichorn said that Vivian L. was "was all by herself" when he approached her at the bus stop.

¶ 4.    The bus came shortly after Eichorn drove off, and Vivian L. rode four or five minutes to her stop, from which she was going to walk the two blocks to her aunt's house. She testified that after she got off the bus she saw Eichorn's car again, and that he told her through his passenger-side window, " 'I could take you the rest of the way home.' " Vivian L. testified that because she "was scared my life was in danger" she ran to her aunt's house and banged on the door to be let in. Vivian L. told her aunt what had just happened, and testified:   "I was shaking and my hands were shaking. I was crying. I was scared. I was in fear."

¶ 5.    Vivian L.'s aunt called the police, and sometime around 8:20 p.m. a police officer with the Milwaukee Sensitive Crimes Unit spoke with Vivian L. at the aunt's house. The officer testified that she was with Vivian L. for "[a]pproximately 45 minutes to an hour maybe," and that "[t]hroughout the interview she continued to be pretty shaken up and pretty scared." The

244

officer added: "When I spoke with her, she was visibly shaken up. She had bouts of some tears. She was scatterbrained. She had a hard time concentrating. She appeared very scared." Vivian L. testified that she dropped the after-school class immediately because of what Eichorn had done.

¶ 6.   As noted, Eichorn testified. He told the trial court that he was sixty-six and had never seen Vivian L. before the day she said he stalked her. Although he denied the second encounter with Vivian L., he admitted trying to pick her up at the bus stop:

> I observed the young lady waiting for the bus, so I rolled down my window, and it was cold, and I asked her if she wanted a ride. She said no, and I said are you sure and she said — she shook her head yeah. She didn't say nothing.

When asked by his lawyer "[w]hat made you think that this young lady would want a ride from you in this day and age," Eichorn replied that he thought she was "about 20" and that "I just took a long shot she might take a ride."

> Q And it was your thought that she would take a ride from you because it was cold?
>
> A That, too, yeah.

He denied swearing at Vivian L. when she refused his offer.

## II.

██ ██

¶ 7.   As we have seen, Eichorn contends that there was not enough evidence to convict him of stalking

Vivian L. *State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–758 (1990) recounts the standard we must apply:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

(Internal citation omitted.) Anti-stalking statutes like Wisconsin's were adopted to deal with the significant national problem of persons preying on others in ways that were not, until enactment of those statutes, effectively handled by existing law:

> "Stalkers may be obsessive, unpredictable, and potentially violent. They often commit a series of increasingly violent acts, which may become suddenly violent, and result in the victim's injury or death." Unlike with other crimes against life and bodily security, the mental state of the victim—as well as the mental state of the perpetrator—is an element of the crime of stalking . . . . "Stalking may involve conduct intended to be an expression of the stalker's feelings toward the victim." "Since stalking statutes criminalize what otherwise would be legitimate behavior based upon the fact that the behavior induces fear, the level of fear induced in a stalking victim is a crucial element of the stalking offense."

*State v. Warbelton,* 2009 WI 6, ¶ 36, 315 Wis. 2d 253,

246

272, 759 N.W.2d 557, 566 (quoted sources omitted). We analyze Eichorn's appeal against this background.

¶ 8.   In order to prove Eichorn guilty of stalking, the State had to prove beyond a reasonable doubt the following:

> (1) Eichorn "intentionally engage[d] in a course of conduct directed at" Vivian L. *See* Wis. Stat. § 940.32(2)(a). As we have seen, and as the trial court recognized, there is no temporal limitation to "course of conduct"—the only thing that is required is that there be "2 or more acts . . . that show a continuity of purpose, including any of the following:   1. Maintaining a visual or physical proximity to the victim[; or] 2. Approaching or confronting the victim." Section 940.32(1)(a). (Paragraph formatting deleted.) The course of conduct can be over a "short" time. *Ibid.* Under our standard of review, there is more than enough evidence to support this element beyond a reasonable doubt.

> (2) Eichorn's conduct towards Vivian L. was such so as to "cause a reasonable person under the same circumstances to suffer serious emotional distress." *See* Wis. Stat. § 940.32(2)(a). As noted earlier, " 'Suffer serious emotional distress' means to *feel terrified, intimidated, threatened, harassed,* or tormented." Section 940.32(1)(d). (Emphasis added.) Although Eichorn contends that this element was not satisfied because he never threatened Vivian L. or made sexually suggestive comments to her, and because he was sixty-six and not physically threatening, under our standard of review, there was more than enough evidence to prove beyond a reasonable doubt that what Vivian L. testified Eichorn did, both at the bus stop and after the four-to-five minute bus ride when she got off the bus to walk the two blocks to her aunt's house, would cause a similarly situated seventeen-year-old (or even someone

247

older) to "feel terrified, intimidated, threatened, [or] harassed." *See ibid.* Indeed, a similarly situated victim would not only be frightened because of the initial approach at the bus stop but would be even more terrified by the realization that the person had followed her bus during the four-to-five minute trip even though he had ostensibly driven away when she refused his first overtures.

(3) The next element is that Eichorn "kn[e]w[] or should [have] know[n] that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress." *See* Wis. Stat. § 940.32(2)(b). Here, too, there is more than enough evidence in the Record to prove beyond a reasonable doubt that at the very least Eichorn should have known that approaching Vivian L. at the bus stop (whether he believed she was seventeen, eighteen, nineteen, twenty, or older) where she was alone and a stranger to him, and then pestering or cajoling her to get into his car would cause her to "feel terrified, intimidated, threatened, [or] harassed." *See* § 940.32(1)(d). Additionally, Eichorn either knew or should have known that following Vivian L.'s bus to try to get her into his car again after she had vociferously rebuffed him the first time at the bus stop would terrify her, especially since he had ostensibly driven away when she rebuffed him at the bus stop. *See ibid.*

(4) The last element here is that what Eichorn did to Vivian L. actually "cause[d]" her "to suffer serious emotional distress." *See* Wis. Stat. § 940.32(2)(c). Again, there is more than enough evidence to prove beyond a reasonable doubt that Vivian L. was both "terrified" and "intimidated" by what Eichorn did to her and that she felt "threatened" as a result. *See* § 940.32(1)(d). Thus, as we have seen, she testified that after Eichorn approached her the second time, she "was scared [her] life was in danger," and, as the police officer

testified, was still terrified some two hours later even though she was in her aunt's house and the police were there.

¶ 9.   In sum, there is more than sufficient evidence under our standard of review to support beyond a reasonable doubt Eichorn's stalking conviction. Although Eichorn refers us to cases where the stalking persisted over a long time, and what happened here spanned apparently fewer than fifteen minutes, the statute, as we have seen, specifically provides that stalking may be "a series of 2" acts over a "short" time if the acts "show a continuity of purpose." WIS. STAT. § 940.32(1)(a). Eichorn's acts reveal beyond a reasonable doubt his "continuity of purpose" to, as he testified, take "a long shot" that she might go with him. We affirm.

*By the Court.*—Judgment affirmed.